Filed 4/8/24 (unmodified opn. attached)

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO CARRILLO,<br><br>    Defendant and Appellant. | F084751<br><br>(Super. Ct. No. MCR09130)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on March 15, 2024, be modified in the following particulars:

1.     On page 2, second full paragraph, in the first sentence the word "after" in the sentence is changed to "when" so the sentence now reads:

> Second, Carrillo's conviction and sentence qualified him for mandatory deportation only when he later admitted a probation violation and the additional jail time caused his total term of imprisonment to exceed one year, and thus became an aggravated felony.

2.     On page 2, third full paragraph, in the third sentence, the word "misunderstand" is changed to "understand" so the sentence now reads:

> Thus, a section 1473.7 motion may be based on the defendant's failure to meaningfully understand or defend against the "actual or potential adverse immigration consequences of" the additional incarceration imposed for a probation violation.  (§ 1473.7, subd. (a)(1).)

3. On page 3, the first sentence of the last paragraph beginning "Here," the word "Here" is deleted and replaced with the phrase "Turning to the facts of this case" so the sentence now reads:

> Turning to the facts of this case, a preponderance of the evidence shows Carrillo did not "meaningfully understand … the … potential adverse immigration consequences of a conviction or sentence" at the time of his conviction.

4. Beginning on page 21, the six paragraphs under heading "III. PREJUDICE RESULTING FROM THE LACK OF UNDERSTANDING" are deleted in their entirety and replaced with the following paragraphs, which will require renumbering of subsequent footnotes:

> The other showing Carrillo must make to obtain relief under section 1473.7 is "that his misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) The statute itself does not define what "prejudicial" means. Our Supreme Court resolved its meaning in the context of a defendant attempting to withdraw a plea by stating the defendant must demonstrate "a reasonable probability that [he or she] would have rejected the plea if [he or she] had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529; *Espinoza*, *supra*, 14 Cal.5th at p. 316.) Courts assessing whether a defendant has established a reasonable probability must consider the totality of the circumstances. (*Vivar*, *supra*, at p. 529; *Espinoza*, *supra*, at p. 320.) A reasonable probability does not mean more likely than not. (*People v. Rodriguez*, *supra*, 68 Cal.App.5th at p. 324.) Instead, it means merely a reasonable chance, which is more than an abstract possibility. (*Ibid.*) In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Ibid.*)

> A defendant's decision to reject a plea leaves him or her with two options—go to trial or negotiate a plea with no immigration consequences. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) Thus, where a defendant claims he or she did not understand the immigration consequences of a plea, the moving papers usually attempt to show prejudice by demonstrating one or both of these options would have been pursued if the defendant had understood the immigration consequences. For example, in *Vivar*, the defendant established prejudice by showing "he wouldn't have pleaded guilty if he'd known it would result in his deportation." (*Vivar*, *supra*, at p. 534.) He

2.

was not required to show the decision to reject the plea would have led to a more favorable result. (*Id*. at pp. 529–530; see *People v. Rodriguez, supra,* 68 Cal.App.5th at pp. 311–312 [prejudice established if the defendant would have risked going to trial even if only to figuratively throw a "Hail Mary"].)

This case does not involve the entry of a plea. As a result, we must consider how to adapt *Vivar*'s prejudice standard to situations (1) where a defendant goes to trial, loses, and is sentenced and (2) where a defendant admits a probation violation and receives an additional period of incarceration. Our Supreme Court has not addressed how to establish prejudice in these situations.

Carrillo's motion focused on establishing that a prejudicial error affected his decision to go to trial and the defense he presented against the charges. He did not attempt to establish a prejudicial error damaged his ability to meaningfully understand and defend against the potential immigration consequences of the probation violation or the additional incarceration imposed for the probation violation. Based on the scope of the issues addressed in Carrillo's moving papers, here we address how a defendant may establish prejudice when he or she has decided to go to trial, loses, and is sentenced. Due to the lack of authority directly on point, our analysis is guided by our Supreme Court's statements about prejudice that are general in nature—that is, do not specifically refer to rejecting a plea.

In *Vivar*, the court discussed prejudice by stating: "The focus on 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result' derived from the fact that a defendant ' "may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges." ' " (*Vivar*, *supra*, 11 Cal.5th at pp. 528–529.) These references to the defendant's calculations and what the defendant would have done lead us to conclude that a defendant who decides to go to trial, loses, and is sentenced can establish prejudice for purposes of section 1473.7, subdivision (a)(1) by showing there is a reasonable probability that (1) he or she would have done something differently—that is, would have taken another "path" (*Vivar, supra,* at p. 529)—and (2) the alternate path would have resulted in an immigration-neutral outcome.

To apply this principle to the events of 2002, we examine what decisions Carrillo could have made differently to avoid "the actual or potential adverse immigration consequences of a conviction" or the combination of a conviction and sentence. (§ 1473.7, subd. (a)(1).) There appear to be at least three decisions Carrillo made during the 2002

3.

proceedings that are in the causal chain of events that lead to the Department of Homeland Security initiating removal proceedings based on his conviction being an aggravated felony.

Chronologically, the first was the decision to go to trial. The second was how he presented his defense at the trial. The third was his choice of arguments and evidence presented at the sentencing hearing. For example, because section 245, subdivision (a)(2) authorizes imprisonment "in a county jail for not less than six months," Carrillo could have (1) asked the court in April 2002 to sentence him to as little as six months in jail instead of the 301 days he had already served and (2) stated he would agree to whatever terms necessary, such as waiving credits, to get a sentence less than time served. (See §§ 2900.5 [custody time credit], 4019 [conduct credits]; *People v. Johnson* (2002) 28 Cal.4th 1050, 1052 [defendant may expressly waive statutory right to credit for time in custody before sentencing]; *People v. Arevalo* (2018) 20 Cal.App.5th 821, 824 [before being placed on probation, defendant waived some custody credits he accrued while in jail].)

5. On page 23, the second sentence of the third paragraph beginning "First," is deleted in its entirety and replaced with the following:

Therefore, we cannot find there is a reasonable probability that (1) Carrillo would have pursued additional defenses and (2) those additional defenses would have avoided the potential adverse immigration consequences of a conviction.

6. On page 24, the phrase "at that trial" is added to the end of the last paragraph so the paragraph now reads:

In sum, we conclude Carrillo has not demonstrated his lack of understanding of immigration consequences prejudiced his decision to go to trial or the presentation of his defense at that trial.

7. On page 27, heading IV.A. is changed to "A. Scope of the 2021 Amendment and Probation Revocation Proceedings"

8. On page 31, the first sentence of the second full paragraph, the word "encompass" is changed to "encompasses."

9. On page 32, the second paragraph under heading IV.A.2. beginning "In part III." is deleted in its entirety and replaced with the following three paragraphs:

4.

First, we conclude a decision to admit a probation violation is analogous to the decision to plead guilty or no contest and, therefore, the test for prejudice should be essentially the same for each decision. The test adopted in *Vivar* is met by "demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) Consequently, we conclude a defendant may establish a prejudicial error under section 1473.7, subdivision (a)(1) by demonstrating a reasonable probability that he or she would not have admitted the probation violation if he or she had correctly understood the immigration consequences. In such a situation, prejudice can be established without showing that the ultimate outcome of the probation revocation proceeding would have been more favorable for purposes of immigration law.

Second, we conclude the decisions made in defending against the amount of time imposed for a probation violation are analogous to the decisions made when defending against the sentence initially imposed for the underlying conviction. Earlier we concluded a defendant who decides to go to trial, loses, and is sentenced can establish prejudice for purposes of section 1473.7, subdivision (a)(1) by showing there is a reasonable probability that (1) he or she would have taken a different path in defending against the sentence and (2) the alternate path would have resulted in an immigration-neutral outcome. Similarly, we conclude a defendant establishes prejudice for purposes of section 1473.7, subdivision (a)(1) by showing there is a reasonable probability that (1) he or she would have taken a different path in defending against the time imposed for a probation violation and (2) the alternate path would have resulted in a more favorable outcome under immigration law.

In summary, the different paths that can be shown to establish prejudice include (1) denying a probation violation instead of admitting it and (2) presenting different arguments and evidence that would have had a reasonable probability of reducing the additional period of incarceration to an immigration-safe amount. Both decisions are links in the causal chain of events that resulted in the "sentence." This interpretation of the prejudice requirement avoids gaps in section 1473.7, subdivision (a)(1)'s coverage that would thwart the statute's purpose.

There is no change in the judgment.

Appellant's petition for rehearing filed on March 29, 2024 is denied.


                                                                FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

Filed 3/15/24 (unmodified opinion)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. FRANCISCO CARRILLO, Defendant and Appellant. | F084751 (Super. Ct. No. MCR09130) **OPINION** |

APPEAL from an order of the Superior Court of Madera County. Dale J. Blea, Judge.

Law Office of Jeremy M. Dobbins and Jeremy M. Dobbins for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Penal Code section 1473.7[1] became effective on January 1, 2017, and authorized motions to vacate a plea of guilty or nolo contendere on the ground the defendant did not meaningfully understand the adverse immigration consequences of a plea. Since then,

---

[1] Unlabeled statutory references are to the Penal Code.

the Fifth District has decided 25 appeals involving the denial of such a motion. This case is unlike the earlier appeals for two reasons.

First, appellant Francisco Carrillo's motion seeks to vacate a conviction that resulted from a trial, not a plea. Motions addressing a conviction or sentence after trial first became available on January 1, 2022, when an amendment expanded section 1473.7, subdivision (a)(1) to reach misunderstandings of the immigration consequences of "a conviction or sentence" instead of just "a plea of guilty or nolo contendere." (Cf. Stats. 2021, ch. 420, § 1, with Stats. 2020, ch. 317, § 5.)

Second, Carrillo's conviction and sentence qualified him for mandatory deportation only after he later admitted a probation violation and the additional jail time caused his total term of imprisonment to exceed one year, and thus became an aggravated felony. Under the Immigration and Nationality Act (INA; 8 U.S.C. § 1101, et seq.), Carrillo's conviction for assault with a firearm is classified as a "crime of violence," but such crimes are "aggravated felonies" only if a "term of imprisonment" of one year or more is imposed. (8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(a) [definition of a crime of violence].) Federal courts interpret "term of imprisonment" to include time in jail for a probation violation. Thus, Carrillo's 2002 conviction and sentence to 301 days in jail met the INA's definition of an aggravated felony only after he admitted a probation violation in 2007 and was ordered to serve an additional 90 days in jail.

The foregoing circumstances raise novel issues of statutory construction. First, to align the state statute with federal immigration law, we interpret the word "sentence" used in section 1473.7, subdivision (a)(1) to encompass the entire "term of imprisonment," as that phrase is used in the INA. Thus, a section 1473.7 motion may be based on the defendant's failure to meaningfully misunderstand or defend against the "actual or potential adverse immigration consequences of" the additional incarceration imposed for a probation violation. (§ 1473.7, subd. (a)(1).)

2.

Second, we address how a defendant may establish his or her error was "prejudicial" for purposes of section 1473.7, subdivision (a)(1) when adverse immigration consequences are caused by the admission of a probation violation and the incarceration imposed for that violation. In that context, prejudice may be established by demonstrating that, had the defendant been aware of the immigration consequences, (1) there is a reasonable probability he or she would not have admitted the probation violation or (2) there is a reasonable probability that an immigration-neutral punishment would have been available and obtained by the defendant. For example, a defendant might be able to "defend against" (§ 1473.7, subd. (a)(1)) the additional incarceration imposed for a probation violation and obtain an immigration-neutral punishment by waiving time credits from his earlier incarceration.

Third, on the question of the relief available under section 1473.7, subdivision (a)(1), we interpret the statute as authorizing an order vacating (1) the initial conviction, (2) the sentence imposed for the initial conviction, (3) a subsequent admission of a probation violation, (4) the additional incarceration imposed for a probation violation, or (5) some combination of the foregoing. As explained below, a motion could challenge the admission of the probation violation, the additional incarceration imposed for the violation, or both.

Based on the foregoing interpretations, we conclude the 2021 amendment abrogated an earlier case concluding that a section 1473.7 motion cannot be used to challenge the admission of a probation violation. (See *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 221 (*Cruz-Lopez*) [probation violation was not a guilty plea that could be withdrawn because of a misunderstanding of the immigration consequences].)

Here, a preponderance of the evidence shows Carrillo did not "meaningfully understand … the … potential adverse immigration consequences of a conviction or sentence" at the time of his conviction. (§ 1473.7, subd. (a)(1).) However, his moving

3.

papers have not demonstrated this error was "prejudicial." (§ 1473.7, subd. (a)(1); see *People v. Vivar* (2021) 11 Cal.5th 510, 529 [definition of prejudicial error] (*Vivar*).)

Carrillo's motion focused on how he defended against a "conviction" and did not contend he would have taken a different path in defending against (1) the terms of the sentence imposed in 2002, (2) the probation violation admitted in 2007, or (3) the additional period of incarceration imposed after he admitted the probation violation. Because this opinion clarifies how the 2021 amendment of section 1473.7 applies to these circumstances, we conclude Carrillo should not be precluded from pursuing a new motion under section 1473.7, subdivision (a)(1) that asserts grounds omitted from his original motion.

We therefore modify the order denying the section 1473.7 motion to be without prejudice and affirm it as modified.

## FACTS AND PROCEEDINGS

*Personal Details*

Carrillo was born in Mexico in September 1981. His March 2022 declaration in support of his section 1473.7 motion states that he was granted lawful permanent resident status in December 1999; he is married and has four children (ages 18, 15, 9 and 6 years old) who are United States citizens; he has maintained gainful employment to support his family and pay taxes; and he currently works as a lead technician at a company that manufactures irrigation equipment. The declaration asserts that Carrillo currently is in removal proceedings in immigration court and that removal from the United States "would cause severe financial and emotional hardships on my family." Carrillo states that he is "as deeply sorry for my actions today as [h]e was 20 years ago" and asked the court to "take into account the responsible father, husband, and hard worker, that [he has] become."

4.

Further details about Carrillo's personal life are not provided by his March 2022 declaration.[2] For instance, it does not describe what occurred between his birth and when he became a lawful permanent resident. We note that Carrillo's reply to the opposition to his section 1473.7 motion stated he had resided in the United States since he was 11 years old, and he attended and graduated from Madera High School. However, factual assertions made by an attorney in a reply are not evidence and our review of the 87-page clerk's transcript did not locate the document cited in the reply as support.

*The Charges*

In July 2001, about two months before his 20th birthday, a 17-count criminal complaint was filed in Madera County Superior Court alleging that on June 30, 2001, Carrillo attempted to murder eight persons. The complaint also alleged one count of an unlawful threat in violation of section 422 and eight counts of unlawful assault with a firearm in violation of section 245, subdivision (a)(2). A special allegation stated Carrillo used a .38-caliber handgun in committing the offenses. Following a preliminary hearing, Carrillo was not held to answer on the attempted murder counts.

---

[2] Our Supreme Court has advised that "[t]he more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review" of a section 1473.7 motion. (*People v. Espinoza* (2023) 14 Cal.5th 311, 325 (*Espinoza*).) Personal details addressed in a robust declaration include, without limitation, (1) the movant's age upon arrival in the United States; (2) the identity of the persons with whom the movant came to the United States; (3) the persons with whom the movant lived upon arrival; (4) the movant's immigration status and language abilities; (5) where the movant's grandparents, parents, siblings, and other relatives live and their immigration status; (6) the movant's marital status and, details about any spouse; (7) the ages and citizenship of any children and grandchildren; (8) the schools, if any, the movant attended in the United States; (9) the movant's employment history; (10) the movant's history of paying state and federal income taxes and property taxes; (11) persons for whom the movant acts as the primary care giver; (12) real property owned by the movant or the movant's parents; (13) connections or lack of connections to the movant's country of origin; (14) community involvement; (15) the movant's or family members' military service; and (16) the movant's pre-plea and post-plea experience with the criminal justice system.

5.

After the attempted murder counts were eliminated, the district attorney filed an information charging Carrillo with unlawfully assaulting eight persons "with a .380 semiautomatic pistol" in violation of section 245, subdivision (b) and one count of an unlawful threat in violation of section 422. Assault with a semiautomatic firearm in violation of section 245, subdivision (b) carries a maximum sentence of nine years in state prison. In comparison, the lesser included offense of assault with a firearm in violation of section 245, subdivision (a)(2) carries a maximum sentence of four years in state prison.

*The Conviction*

Carrillo retained Eric Schweitzer as defense counsel and took the case to trial. On March 1, 2002, a jury found Carrillo not guilty of violating section 245, subdivision (b) and found him guilty on six counts of the lesser-included offense of violating section 245, subdivision (a)(2). The jury also found true the allegations in all six counts that Carrillo used a firearm within the meaning of section 12022.5, subdivisions (a) and (d). The seventh and ninth counts were dismissed on the motion of the People in furtherance of justice.

On April 26, 2002, the trial court suspended the imposition of sentence, granted formal probation for a term of five years, and ordered Carrillo to serve 301 days in the county jail, with a credit for 301 days.[3] The terms and conditions of probation include submitting to alcohol testing at the discretion of any peace officer, not possessing or using alcohol, and attending substance abuse counseling. The minute order from the hearing shows that Carrillo was present with his attorney, Schweitzer, and did not use an interpreter.

---

[3] The sentencing hearing occurred 301 days after June 30, 2001—the date of the assaults. Thus, the credit appears to be based solely on time served.

6.

*Probation Violation*

In April 2007, near the end of Carrillo's probation, a petition to revoke his probation was filed. It alleged that about 21 months earlier, on July 1, 2005, Carrillo violated Vehicle Code section 23152, subdivisions (a) and (b)—that is, driving a vehicle under the influence of alcohol and driving a vehicle with a blood-alcohol content of .08 percent or more.

On May 29, 2007, Carrillo admitted the allegations in the petition. At the hearing, Carrillo was represented by Zachary Curtis of Ciummo and Associates. The minute order does not reflect the use of an interpreter. The trial court sentenced Carrillo to serve 90 days in jail, consecutive with his earlier sentence, and ordered the termination of probation upon his release from custody.

*Immigration Proceedings*

In August 2016, the Department of Homeland Security served Carrillo with a form No. I-862, "Notice to Appear," in removal proceedings under the INA. The notice to appear stated that (1) Carrillo was residing at the Adelanto Detention Facility, (2) he was a native and citizen of Mexico, and (3) his March 2002 conviction of assault with a firearm in violation of section 245, subdivision (a)(2) was an "aggravated felony" because it was a crime of violence for which the term of imprisonment ordered was at least one year. (8 U.S.C. § 1101(a)(43)(F); see 18 U.S.C. § 16(a) [definition of a crime of violence].)

In March 2018, the Department of Homeland Security issued form No. I-261, "Additional Charges of Inadmissibility/Deportability," in the removal proceedings. The form alleged Carrillo had been sentenced to serve 301 days in jail on the March 2002 conviction and, in May 2007, he was found in violation of probation and sentenced to an additional 90 days in jail. The form listed a Madera address for Carrillo.

A document filed in the removal proceedings with the form No. I-261 stated the additional allegations supported the charge of removability and also stated Carrillo was

"NON-DETAINED."  The document cited federal decisions for the principles that a violation of section 245, subdivision (a)(2) was categorically a "crime of violence" under 18 United States Code section 16(a) and that a sentence imposed after a probation violation was valid for immigration purposes.  When the 90 days of jail time for the probation violation was added to Carrillo's 301-day sentence, his total term of imprisonment was 391 days, which exceeded one year.  (See 8 U.S.C. § 1101(a)(43)(F).)  Therefore, in the circumstances of this case, the additional jail time imposed for the probation violation was what caused Carrillo's conviction for assault with a firearm to qualify as an aggravated felony for immigration purposes.[4]

*Section 1473.7 Motion*

On April 1, 2022, Carrillo filed a section 1473.7 motion to vacate his conviction using optional Judicial Council form No. CR-187 (rev. Jan. 1, 2020).  Although item 1 of the form indicates a motion may "concern[] a conviction or sentence," in item 3.b. of the form, Carrillo asserted he was "entitled to vacatur of *the prior conviction* if legally invalid due to a prejudicial error damaging his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a *guilty conviction*."  (Italics added.)  He also referred to what he needed to show "[t]o set aside *a conviction*."  Thus, the motion challenged only the conviction.  It made no mention of vacating all or part of his sentence.

Carrillo supported the motion with his March 2022 declaration, which stated (1) Schweitzer, his retained counsel, discussed a plan to attack and possibly reduce the eight

---

**4**     Information about the status of Carrillo's immigration case is publicly available. The Executive Office for Immigration Review (8 C.F.R. § 3.0), an agency within the United States Department of Justice, maintains an online Automated Case Information System for immigration court cases (available at <https://acis.eoir.justice.gov/en/>). When Carrillo's nine-digit "A-Number" is entered into the system, it shows his upcoming individual hearing is scheduled for February 24, 2025, before immigration judge Colin P. Eichenberger in Concord.

counts of attempted murder; (2) Schweitzer did not ask about Carrillo's immigration status and did not explain the adverse effects of a guilty verdict on his status as a lawful permanent resident; and (3) Carrillo did not recall discussing any potential adverse immigration consequences with Schweitzer. Addressing his state of mind, Carrillo's declaration stated, "I did not meaningfully understand that the[] convictions would have adverse consequences on my Legal Permanent Resident status because my attorney never explained the consequences to me. Had I known, I would have asked Mr. Schweitzer to pursue additional defenses against the charges."

A declaration from Schweitzer also supported the motion. Schweitzer stated that their initial strategy focused on preventing a conviction for attempted murder, which succeeded when Carrillo was not held to answer on those counts. Schweitzer also stated that, before the trial, his conversations with Carrillo "focused on a strategy to present evidence that undermined the main charge." Schweitzer did not recall ever discussing Carrillo's immigration status and, as a result, mitigation of immigration consequences was not part of his strategy. Accordingly, Schweitzer stated he did not recall conducting any research into the immigration consequences for Carrillo at that time. Schweitzer also addressed the lesser included offenses for which Carrillo was convicted, stating that he did not recall ever discussing or considering the impact a conviction for assault with a firearm might have on Carrillo's immigration status. Schweitzer's declaration also notes that, after he represented Carrillo in 2002, there were significant changes in the duties imposed on defense counsel with respect to the potential immigration consequences of a plea or conviction.

Further support for Carrillo's motion included copies of minute orders from his conviction, sentencing, and the subsequent admission of a probation violation. He also presented documents from his pending removal proceedings. The appellate record does not contain reporter's transcripts from the 2002 trial, the April 2002 sentencing hearing, or the May 2007 probation revocation proceeding.

9.

The People's response to Carrillo's motion to vacate argued that nothing in the moving papers established by a preponderance of the evidence that Carrillo suffered a "prejudicial error damaging his ability to meaningfully understand, defend against, or knowingly accept the actual or potential consequences of *taking his case to trial*." (Italics added.) The People also argued there was no reasonable probability that Carrillo "would have never taken the case to jury trial had he been advised of the adverse immigration consequences" and that the record suggested the opposite because, after achieving his primary objective of defeating the attempted murder charges, Carrillo still chose to take the case to trial nearly seven months later in an attempt to defeat the remaining, less serious charges. For these reasons, the response asked the court to deny the motion.

Carrillo's reply asserted that his declaration was corroborated by Schweitzer's declaration and together they provided sufficient evidence to establish he had not been advised of the adverse immigration consequences. His reply also asserted he demonstrated a reasonable probability that "he would have sought an immigration-neutral plea bargain instead of proceeding to trial" if he had known the risk of deportation associated with a guilty verdict. His reply does not address the likelihood of such a plea bargain being available.[5]

The foregoing describes the basis for Carrillo's motion to vacate and the issues and arguments presented to the trial court. To demonstrate the limited scope of the issues raised by the motion, here we set forth the grounds for relief under section 1473.7, subdivision (a)(1) that were not presented by Carrillo or litigated by the parties. First,

---

[5] This aspect of a prejudice inquiry can be addressed by offering an expert declaration opining that alternative, nondeportable dispositions would have been available and acceptable to the prosecutor. (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 665.) This type of declaration, however, is not the exclusive method of proof because courts must consider the totality of the circumstances, which necessarily involves a case-by-case examination of the record. (See *Espinoza*, *supra*, 14 Cal.5th at p. 325.)

10.

Carrillo did not request that his 2002 sentence to 301 days in jail and five years of probation be vacated due to a misunderstanding of immigration consequences that damaged his ability to defend against or knowingly accept the consequences of a sentence containing those terms. Second, Carrillo did not ask to have his 2007 admission of the probation violation vacated. Third, he did not request the vacatur of the 90 days of additional jail time imposed for the probation violation based on his failure to understand that additional time of 64 days or more would transform his conviction into an aggravated felony and make his removal mandatory.

*Hearing and Decision*

In May 2022, the trial court held a hearing on the motion. Carrillo's attorney appeared via Zoom and Carrillo was not present. No testimony or other evidence was presented at the hearing. After the matter was submitted, the court noted that (1) Carrillo had not alleged an immigration neutral plea would have been available; (2) nothing in the record suggested that a plea to an immigration neutral offense would have been acceptable to the prosecutor or to the court; (3) it could not identify an immigration neutral offense that could have been pleaded to under the facts of the case; and (4) it was apparent from the facts and circumstances of the case that the prosecution was not interested in a plea that would have been immigration neutral. The court stated: "I don't find that there was prejudice to Mr. Carrillo by proceeding to trial and his ultimate conviction" for violating section 245, subdivision (a)(2). Consequently, the court denied the motion. Carrillo appealed.

In July 2023, we granted Carrillo an extension of time to file his appellant's reply brief and, pursuant to Government Code section 68081, directed him to address specific issues relating to the interpretation and application of section 1473.7, subdivision (a)(1) to the circumstances of this case. Those issues had not been addressed in a published opinion or the parties' earlier briefs. The order also authorized, but did not require, the

11.

Attorney General to respond.  The Attorney General elected to address the issues and filed a supplemental brief on October 31, 2023.

**DISCUSSION**

I.      OVERVIEW OF SECTION 1473.7

In 2016, the Legislature considered the problems faced by defendants who "were unaware of the immigration consequences posed by a plea entered many years earlier" and were no longer in state custody.  (*Vivar*, *supra*, 11 Cal.5th at p. 523.)  The convictions of defendants who had completed their sentences and any probation or parole period were beyond the reach of habeas corpus.  (*Ibid*.)  The Legislature enacted section 1473.7 to create a mechanism for such defendants to obtain relief.  (*Vivar, supra,* at p. 523.)

The versions of section 1473.7, subdivision (a)(1) in effect from January 1, 2019 through December 31, 2021, stated a person no longer in criminal custody could file a motion to vacate a conviction or sentence for the following reason:  "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a *plea of guilty or nolo contendere*."  (Stats. 2020, ch. 317, § 5; Stats. 2018, ch. 825, § 2; italics added.)

In 2021, the Legislature amended the statute by replacing the phrase "plea of guilty or nolo contendere" with the broader phrase "conviction or sentence."  (Stats. 2021, ch. 420, § 1.)  The amendment "expand[ed] the category of persons able to seek to vacate a conviction or sentence as legally invalid, whatever way that person was convicted or sentence[d], including a person who was found guilty after a trial."  (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1259 (2021–2022 Reg. Sess.) June 22, 2021, p. 4; *People v. Singh* (2022) 81 Cal.App.5th 147, 152–153 [defendants whose convictions derive from a trial are eligible for relief under § 1473.7; amendment created

12.

ameliorative changes].)  The amendment became effective on January 1, 2022.  (*Singh, supra,* at p. 152.)

A defendant must satisfy three statutory requirements to be *eligible* to seek relief from a "legally invalid" conviction or sentence under section 1473.7, subdivision (a)(1). It is undisputed that Carrillo has met these requirements.  First, Carrillo "is no longer in criminal custody" for the challenged offense.  (§ 1473.7, subd. (a).)  Second, he has "establish[ed] that the conviction or sentence being challenged … has the potential to cause removal."  (§ 1473.7, subd. (e)(1); see *People v. Gregor* (2022) 82 Cal.App.5th 147, 158.)  Third, his motion is timely under the mandatory rule in section 1473.7, subdivision (b)(1) because he has not received notice of a final removal order.  (See §1473.7, subd. (b)(2)(B); *People v. Perez* (2021) 67 Cal.App.5th 1008, 1016.)[6]  Thus, Carrillo is eligible to have a court determine the merits of his claim that is "conviction or sentence is legally invalid" pursuant to section 1473.7, subdivision (a)(1).

To establish that a conviction or sentence is legally invalid, a "defendant must first show that he did not meaningfully understand the immigration consequences of his [conviction or sentence].  Next, the defendant must show that his misunderstanding constituted prejudicial error."  (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)  The standard of proof is a preponderance of the evidence.  (§ 1473.7, subd. (e)(1); *Vivar, supra*, 11 Cal.5th at p. 517.)

When assessing whether a defendant has demonstrated these two requirements, appellate courts conduct an independent review.  (*Vivar, supra,* 11 Cal.5th at p. 526.)

---

**6**     Before January 1, 2019, it was accurate to state that a "motion *must* be filed with reasonable diligence after the later" of two triggering events.  (22B Cal.Jur.3d (2017) Criminal Law: Posttrial Proceedings, § 710, p. 147, italics added; see *People v. Tapia* (2018) 26 Cal.App.5th 942, 949; *People v. Morales* (2018) 25 Cal.App.5th 502, 505.)  As explained in *Perez*, that standard was abrogated by the 2018 amendment of the statute's timeliness provision.  (*Perez*, *supra*, 67 Cal.App.5th at pp. 1013–1014; see Stats. 2018, ch. 825, § 2; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 759 [2018 amendment "created a strikingly generous timeliness standard"] (*Alatorre*).)

13.

When, as here, a trial court's factual findings are derived entirely from documents (i.e., a cold record), the trial court and appellate courts are in the same position and deference to the trial court's findings is unwarranted. (*Id*. at p. 528.) In such cases, the appellate court must decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.)

## II.  MISUNDERSTANDING OF POTENTIAL IMMIGRATION CONSEQUENCES

Applying the sequence of analysis adopted by our Supreme Court, we first consider whether Carrillo has proven that he did not meaningfully understand the actual or potential adverse immigration consequences of the conviction or sentence. (§ 1473.7, subd. (a)(1); see *Espinoza*, *supra*, 14 Cal.5th at p. 319.) We begin by identifying the immigration consequences of the conviction and potential sentences before evaluating Carrillo's subjective understanding of those consequences.

### A.  Immigration Consequences of the Conviction

The INA organizes criminal offenses into various categories and specifies the immigration consequences that attach to each category. Here, we examine three classifications of offenses—aggravated felonies, crimes involving moral turpitude, and certain firearm offenses. The Department of Homeland Security's notice to appear, as amended, alleges the definition of an aggravated felony is satisfied by Carrillo's March 2002 conviction for assault with a firearm in violation of section 245, subdivision (a)(2), coupled with the sentence of 391 days in jail. Consequently, the adverse immigration consequences of an aggravated felony conviction are described first, followed by the other two classifications. The latter two classifications were raised in the Attorney General's supplemental brief as alternate grounds for deporting Carrillo.

#### 1.  *Aggravated Felony*

Assault with a firearm under section 245, subdivision (a)(2) is categorically a "crime of violence." (18 U.S.C. § 16(a); *United States v. Heron-Salinas* (9th Cir. 2009)

14.

566 F.3d 898, 899.) A crime of violence qualifies as an aggravated felony if the "term of imprisonment" ordered is at least one year. (8 U.S.C. § 1101(a)(43)(F); see *People v. Villalba* (2023) 89 Cal.App.5th 659, 667 (*Villalba*).) A sentence of 365 days qualifies as a term of imprisonment of at least one year. (*Villalba*, at p. 667, fn. 3.) Federal courts have interpreted the phrase "term of imprisonment" to include the additional time that a defendant serves for a probation violation. (*United States v. Hidalgo-Macias* (2d Cir. 2002) 300 F.3d 281, 284–285; *United States v. Jimenez* (9th Cir. 2001) 258 F.3d 1120, 1125.) Here, the parties do not dispute that Carrillo's conviction and the total sentence of 391 days in jail qualifies as an aggravated felony under the INA.

A noncitizen convicted of an aggravated felony at any time after admission is conclusively presumed deportable and is subject to mandatory deportation and permanent exclusion from the United States. (8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(c); *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174; *Villalba*, *supra*, 89 Cal.App.5th at p. 666.) The noncitizen also is "ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country. See [8 U.S.C. §] 1229b(a)(3), (b)(1)(C). Accordingly, removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here." (*Sessions v. Dimaya* (2018) 584 U.S. 148, 153.) In addition, a noncitizen convicted of an aggravated felony has "greatly reduced procedural rights in detention and removal proceedings." (Kesselbrenner & Rosenberg, Immigration Law and Crimes (Summer Ed./2023) § 7:22, p. 553, fns. omitted.)

### 2. *Crime Involving Moral Turpitude*

Crimes involving moral turpitude is a general category that covers a wide variety of crimes. (*Barton v. Barr* (2020) 590 U.S. ___ [140 S.Ct. 1442, 1448].) The moral turpitude component is met when the offense involves " 'either fraud or base, vile, and depraved conduct that shocks the public conscience.' " (*Jauregui-Cardenas v. Barr* (9th

Cir. 2020) 946 F.3d 1116, 1120.) The Ninth Circuit has concluded the Board of Immigration Appeals correctly determined a conviction under section 245, subdivision (a)(1) for assault with a deadly weapon is a crime involving moral turpitude. (*Safaryan v. Barr* (9th Cir. 2020) 975 F.3d 976, 988.) Consequently, it is reasonable to infer that assault with a specific type of deadly weapon—a firearm—also is an offense that satisfies the moral turpitude component.

A crime involving moral turpitude renders a noncitizen deportable if the crime was "committed within five years … after the date of admission" and is one "for which a sentence of one year or longer may be imposed." (8 U.S.C. § 1227(a)(2)(A)(i).) The length-of-sentence component is satisfied in this case because assault with a firearm may be punished by "imprisonment in the state prison for two, three, or four years." (§ 245, subd. (a)(2).) Whether the timing component is satisfied in the case is discussed in part IV.B.1., *post*.

Besides deportation, a noncitizen convicted of a crime involving moral turpitude may not be admitted into the United States. (8 U.S.C. § 1182(a)(2).) Under 8 United States Code section 1229b(b)(1)(C), conviction of a crime involving moral turpitude renders a noncitizen ineligible for a discretionary cancellation of removal. (*Pereida v. Wilkinson* (2021) 592 U.S. ___ [141 S.Ct. 754, 768].)

### 3. *Certain firearms offenses*

Commission of certain firearm offenses, including a conviction "under any law of purchasing, selling, offering for sale, exchanging, *using*, owning, possessing, or carrying … a firearm … in violation of any law," renders a noncitizen deportable. (8 U.S.C. § 1227(a)(2)(C), italics added.) The adverse immigration consequences of such a conviction are fewer than a conviction of an aggravated felony or crime involving moral turpitude because a firearm conviction does not render the noncitizen inadmissible. (*Romo v. Barr* (9th Cir. 2019) 933 F.3d 1191, 1202.)

16.

The jury found true the special allegation in all six counts that Carrillo "used a firearm within the meaning of section 12022.5(a) and (d)." Thus, it appears Carrillo's conviction involved "using" a firearm for purposes of 8 United States Code section 1227(a)(2)(C) and he would be deportable on that ground. The Department of Homeland Security's failure to assert Carrillo's assault conviction was a deportable firearms offense is discussed later in part IV.B.2., *post*.

B.       Defendant's Misunderstanding

We next consider whether Carrillo meaningfully understood the potential adverse immigration consequences, which included mandatory deportation. The focus of this inquiry is the defendant's own error. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871.) In other words, the key is the mindset of the defendant and not what an objectively reasonable person would have understood under the circumstances. (*Ibid.*; see *Alatorre*, *supra*, 70 Cal.App.5th at p. 769 ["the 'error' is that the petitioner subjectively misunderstood the immigration consequences"; no need to establish the mistake was caused by a third party].)

The evidence Carrillo presented to prove he lacked a meaningful understanding of the potential immigration consequences include his declaration, Schweitzer's declaration, and documents from the proceedings in the underlying criminal case. Carrillo is the only one with direct access to his state of mind and his declaration asserted he "did not meaningfully understand the immigration consequences of being convicted at trial" and, more specifically, that he did not "meaningfully understand that these convictions would have adverse consequences on my Legal Permanent Resident status." To support this assertion about a lack of understanding, Carrillo stated that when he discussed a plan for attacking the charges with his attorney, Schweitzer did not ask about his immigration status and did not explain the adverse effects of a guilty verdict on that status. Addressing a broader timeframe, Carrillo stated that, during the time Schweitzer

17.

represented him, Carrillo did not recall "Schweitzer ever asking what my immigration status was or discussing any potential adverse immigration consequences." Because Schweitzer represented Carrillo at the April 2002 sentencing hearing, this assertion covers Carrillo's understanding when he decided to go to trial *and* when he decided what arguments and evidence to present at the sentencing hearing.

A defendant's assertion as to his or her state of mind is not accepted at face value by courts evaluating a section 1473.7 motion. Such assertions must be corroborated with objective evidence. (*Espinoza*, *supra*, 14 Cal.5th at p. 321; *Vivar*, *supra*, 11 Cal.5th at p. 530.) Here, Carrillo presented Schweitzer's declaration to corroborate his assertions that they did not discuss Carrillo's immigration status or the potential adverse consequences of a conviction. (See *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 [the "defendant's claims of error were supported by his former attorney's undisputed testimony"].) Schweitzer's March 2022 declaration supports Carrillo's factual assertions. The declaration was signed more than 20 years after the jury's March 2002 verdict. Schweitzer stated: "As I recall, I never discussed or considered Mr. Carrillo's immigration status and the impact a conviction for assault with a deadly weapon might have on his immigration status." Schweitzer also stated he did "not recall conducting any research into any immigration consequences for Mr. Carrillo at that time."

Exercising our independent judgment, we find Schweitzer's declaration is credible. The fact that his assertions are qualified by what he can recall is reasonable because the absence of immigration advice occurred two decades ago. Furthermore, Schweitzer's inability to recall any discussion of immigration consequences fits with then applicable law. In 2002, there was no Sixth Amendment obligation on the part of defense counsel to affirmatively advise a defendant of the immigration consequences of a conviction. (See *Chaidez v. United States* (2013) 568 U.S. 342, 353.) Rather, most courts had determined that no such duty existed. (*Ibid.*) Carrillo's trial and his sentencing occurred well before the United States Supreme Court decided *Padilla v.*

18.

*Kentucky* (2010) 559 U.S. 356 (*Padilla*) and before the Legislature enacted sections 1016.2 and 1016.3. (See Stats. 2015, ch. 705, §§ 1, 2.) In *Padilla*, the United States Supreme Court changed the law and "held that the Sixth Amendment requires defense counsel to provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases." (§ 1016.2, subd. (a); see *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 307–312 [historical overview of defense counsel's duty to advise a client of specific immigration consequences].)

Additional factors that support Carrillo's assertions about his lack of understanding of immigration consequences are his age and the complexity of federal immigration law. When he was charged in July 2001, he was 19 years old. At the time of the trial and sentencing, he was 20 years old. Both the United States and California Supreme Courts have recognized that federal immigration law can be complex and there are numerous situations where the consequences of a conviction are unclear. (*Padilla*, *supra*, 559 U.S. at p. 369; *People v. Patterson* (2017) 2 Cal.5th 885, 898.) Thus, one court referred to the "bewildering interplay between state criminal proceedings and federal immigration enforcement—an area of the law that has 'aptly been called a labyrinth that only a lawyer could navigate.' " (*Alatorre*, *supra*, 70 Cal.App.5th at p. 765.) Based on the complexity of immigration law, we find it highly unlikely that the 20-year-old Carrillo would have understood that a conviction for assault with a firearm (whether or not a semiautomatic) and a term of imprisonment of at least 365 days qualified as an aggravated felony and would subject him to mandatory deportation.

Our independent review of the totality of the circumstances relevant to Carrillo's subjective understanding of the immigration consequence of his conviction and sentence also takes into account the absence of evidence supporting the inference that he understood those consequences. First, the People presented no evidence to the trial court showing Carrillo understood the immigration consequences and, instead, simply argued Carrillo's evidence was insufficient to carry his burden of proof. Second, the Attorney

19.

General's appellate briefing cites no evidence from which one could reasonably infer that Carrillo understood immigration law and realized a conviction could render him deportable. Third, because Carrillo went to trial, the record does not contain the section 1016.5 advisement given to defendants before a court accepts a plea of guilty or nolo contendere. Fourth, there is no evidence Carrillo had a prior criminal history from which he might have gained familiarity with the criminal justice system and learned the potential immigration consequences of criminal proceedings.

Based on the declarations of Carrillo and Schweitzer, the surrounding circumstances, and the absence of any evidence to the contrary, we find that Carrillo has proven by a preponderance of the evidence that he did not understand (meaningfully or otherwise) the potential immigration consequences of a conviction and sentence at the time he decided to go to trial, at the time of his April 2002 sentencing, or anytime in between those two events. More specifically, we find that he did not understand that (1) a sentence to a term of imprisonment of a year or more would render his conviction an aggravated felony and subject him to mandatory deportation and (2) the relevant term of imprisonment would include any additional incarceration subsequently imposed for a probation violation.

The declarations of Carrillo and Schweitzer did not address Carrillo's understanding of the potential immigration consequences after Schweitzer's representation of Carrillo concluded. Reflecting the evidence presented, Carrillo's motion did not argue that he lacked an understanding of the immigration consequences in 2005 when he was arrested for driving under the influence or in 2007 when the probation revocation proceedings were conducted. Consequently, we make no findings, one way or the other, regarding Carrillo's understanding of immigration consequences at those times.

### III. PREJUDICE RESULTING FROM THE LACK OF UNDERSTANDING

The other showing Carrillo must make to obtain relief under section 1473.7 is "that his misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) The statute itself does not define what "prejudicial" means. Our Supreme Court resolved its meaning in the context of a defendant attempting to withdraw a plea by stating the defendant must demonstrate "a reasonable probability that [he or she] would have rejected the plea if [he or she] had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529; *Espinoza*, *supra*, 14 Cal.5th at p. 316.) A decision to reject a plea leaves the defendant with two options—go to trial or negotiate a plea with no immigration consequences. (*Vivar*, *supra*, at p. 529.) Thus, where a defendant claims he or she did not understand the immigration consequences of a plea, the moving papers usually attempt to show prejudice by demonstrating one or both of these options would have been pursued if the defendant had understood the immigration consequences. (See *People v. Rodriguez, supra,* 68 Cal.App.5th at pp. 311–312 [prejudice established if the defendant would have risked going to trial even if only to figuratively throw a "Hail Mary"].)

An issue presented by the circumstances of this case, which does not involve a plea, is how prejudice is established (1) when a defendant goes to trial, loses, and is sentenced or (2) when a defendant admits a probation violation and receives an additional period of incarceration. Our Supreme Court has not addressed how to establish prejudice in these situations.

Carrillo's motion focused on establishing that a prejudicial error affected his decision to go to trial and the defense he presented against the charges. He did not attempt to establish a prejudicial error damaged his ability to meaningfully understand and defend against the potential immigration consequences of the probation violation or the additional incarceration imposed for the probation violation. Based on the scope of the issues addressed in Carrillo's moving papers, here we address how a defendant may

21.

establish prejudice when he or she has decided to go to trial, loses, and is sentenced. Due to the lack of authority directly on point, our analysis is guided by our Supreme Court's statements about prejudice that are general in nature—that is, do not specifically refer to rejecting a plea.

In *Vivar*, the court discussed prejudice by stating: "The focus on 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result' derived from the fact that a defendant ' "may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges." ' " (*Vivar*, *supra*, 11 Cal.5th at pp. 528–529.) Based on the references to what the defendant would have done and to the defendant's calculations, we conclude a defendant can establish prejudice for purposes of section 1473.7, subdivision (a)(1) by showing a reasonable probability[7] he or she would have done something differently—that is, would have taken another "path"—that may have avoided adverse immigration consequences. (*Vivar*, *supra*, at p. 529.)

To apply this general principle to the facts of this case, we examine what decisions Carrillo could have made differently in 2002 to avoid the adverse immigration consequences of his conviction or the combination of his conviction and sentence. There appear to be at least three decisions Carrillo made during the 2002 proceedings that are in the causal chain of events that lead to the Department of Homeland Security initiating removal proceedings based on his conviction being an aggravated felony.

---

[7] In assessing whether a defendant has established a reasonable probability, the court must consider the totality of the circumstances. (*Vivar*, *supra*, 11 Cal.5th at p. 529; *Espinoza*, *supra*, 14 Cal.5th at p. 320.) A reasonable probability does not mean more likely than not. (*People v. Rodriguez, supra*, 68 Cal.App.5th at p. 324.) Instead, it means merely a reasonable chance, which is more than an abstract possibility. (*Ibid.*) In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Ibid.*)

Chronologically, the first was the decision to go to trial. The second was how he presented his defense at the trial. The third was his choice of arguments and evidence presented at the sentencing hearing. For example, Carrillo could have argued for a term of "imprisonment … in a county jail for [only] six months" (§ 245, subd. (a)(2)) instead of the 301 days imposed and agreed to do whatever necessary to get a sentence less than the 301 days he had already served.

A.    The 2002 Conviction

The decision to go to trial and the decision about how to defend against the charges were made before the conviction and, thus, a prejudicial error in making those decisions would provide a basis for vacating the conviction, which would necessarily vacate the sentence. (§ 1473.7, subd. (a)(1).) Carrillo's appellant's opening brief identifies an alternate path to going to trial by asserting that if he had understood the immigration consequences, he would have asked Schweitzer to negotiate or explore an immigration safe plea. His March 2022 declaration states Schweitzer "did not inform [him] of any efforts he made to either investigate alternative options such as pleading guilty to offenses that could mitigate immigration consequences." His declaration also asserts he would have acted differently in the presenting his defense: "Had I known [of the adverse immigration consequences], I would have asked Mr. Schweitzer to pursue additional defenses against the charges."

First, Carrillo's papers do not identify what the additional defenses might have been. Therefore, we cannot find there is a reasonable probability that Carrillo would have pursued additional defenses and thereby avoided the potential adverse immigration consequences of a conviction.

Second, there is no evidence in the record that an immigration safe plea, if explored by Schweitzer, would have been offered by the prosecution or accepted by the

23.

court.[8]  The information filed after the attempted murder charges were eliminated alleged eight counts of assault with a semiautomatic firearm in violation of section 245, subdivision (b).  As described by the trial court, this filing suggests the district attorney's office viewed the incident as serious and was unlikely to agree to a plea to an offense without immigration consequences.  (Cf. *People v. Garcia* (2022) 79 Cal.App.5th 1059, 1066 [rejecting a claim that defendant would have held out for a better deal or taken the case to trial where the case against the defendant was " 'very strong' " and there was no evidence that the prosecutor was likely to agree to any "immigration-neutral disposition"].)  Carrillo's papers have not identified an offense appropriate to the circumstances that would have lacked adverse immigration consequences or addressed the likelihood a plea to such an offense would have been accepted by the prosecutor.  (See *People v. Abdelsalam*, *supra*, 73 Cal.App.5th at p. 665 [expert declaration opining that alternative, nondeportable dispositions would have been available and acceptable to the prosecutor].)  Consequently, based on our independent review of the record, we conclude that the statements in Carrillo's declaration and the other evidence are insufficient to demonstrate a reasonable probability that the matter could have been resolved by an immigration safe plea.

In sum, we conclude Carrillo has not demonstrated his lack of understanding of immigration consequences prejudiced his decision to go to trial or the presentation of his defense.

---

[8]    The trial and sentencing occurred in 2002 before the enactment of section 1016.3, which imposes duties on prosecutors who develop and consider plea offers.  Section 1016.3, subdivision (b) provides:  "The prosecution, in the interests of justice, and in furtherance of the findings and declarations of Section 1016.2, shall consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution."

B.    The 2002 Sentence

Next, we consider whether Carrillo has demonstrated his decisions relating to his 2002 sentencing hearing were prejudiced by his lack of understanding of immigration consequences.  Carrillo's moving papers did not explicitly argue his approach to the sentencing hearing was prejudiced by his lack of understanding of the potential immigration consequences.  However, in response to questions in our briefing order issued under Government Code section 68081, Carrillo's reply brief addresses what he might have done differently at that hearing if he had understood how the sentence affected whether the conviction of assault with a firearm qualified as an aggravated felony for immigration purposes.  In effect, Carrillo argues that, even though this theory was not articulated in his moving papers, he fortuitously presented sufficient evidence for this court to independently find that he would have adopted different tactics by arguing for a sentence less than the 301 days in jail imposed by the court and there was a reasonable probability of succeeding.  Carrillo specifically asserts that a shorter sentence could have been obtained if he had waived time credits.  (See *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 909 [reduction of a sentence could be offset by the defendant waiving credits].)

The idea of prejudice underlying this argument is that if the jail time imposed in 2002 had been less than 275 days, then his subsequent incarceration of 90 days for the probation violation would not have transformed Carrillo's conviction into an aggravated felony because the total "term of imprisonment" would have been less than one year.  (8 U.S.C. § 1101(a)(43)(F).)  We conclude this theory, if supported by sufficient evidence, is one way of establishing a misunderstanding of immigration consequences was prejudicial for purposes of section 1473.7, subdivision (a)(1).  In particular, Carrillo's misunderstanding would have affected his ability to "defend against" the adverse immigration consequences of the "sentence," as those terms are used in section 1473.7, subdivision (a)(1).

25.

Having decided that Carrillo has presented a legally cognizable theory of prejudice, we consider whether the evidence he presented is sufficient to prove prejudice on that ground. In other words, we consider whether Carrillo's evidence fortuitously proved a theory not stated in his moving papers. The evidence he presented—namely, his declaration and Schweitzer's declaration—did not address pursuing avenues that could have resulted in a shorter jail term being imposed at the 2002 sentencing hearing. More specifically, the declarations did not mention the possibility of waiving credits. Without supporting evidence, we cannot conclude Carrillo has established a reasonable probability that the suggested tactic (1) would have been adopted by his attorney and (2) would have resulted in jail time of less than 275 days being imposed at the 2002 sentencing. Consequently, Carrillo's supporting evidence is not sufficient to establish a theory of prejudice that was not developed below.

To summarize, after conducting an independent review of the totality of the circumstances set forth in the cold record, we find Carrillo has proven that, at the time of the 2002 proceedings, he did not understand the potential immigration consequences of a conviction or the sentences possible after the conviction. However, we find that he has not demonstrated a reasonable probability that his misunderstanding prejudiced his "ability to meaningfully understand, defend against, or knowingly accept the … immigration consequence of a conviction" (§ 1473.7, subd. (a)(1)), which was the theory of prejudice raised below. Furthermore, Carrillo's evidence has not proven his misunderstanding prejudiced his "ability to meaningfully understand, defend against, or knowingly accept the … potential adverse immigration consequence of a … sentence" (§ 1473.7, subd. (a)(1)), a theory of prejudice not raised below. Therefore, the trial court correctly determined the grounds presented in Carrillo's motion did not entitle him to relief.

IV.    MODIFICATION OF TRIAL COURT'S ORDER

The final topic we address is whether the trial court's order should be modified to be without prejudice to Carrillo pursuing theories of prejudicial error that (1) were not raised in his original motion and (2) have not been explicitly recognized in a published judicial decision explaining the scope of the 2021 amendment of section 1473.7, subdivision (a)(1).  This topic was raised in our briefing order, which asked the parties whether Carrillo should be allowed to file a new or amended motion asserting a prejudicial error based on his admission of the probation violation, his failure to defend against a term of incarceration of more than 63 days for that violation, or both.  The Attorney General answered no, and Carrillo answered yes.

A.    Scope of the 2021 Amendment

Our analysis of this issue begins with whether there are potentially meritorious theories of prejudicial error that were not raised in Carrillo's original motion.  If such theories are contrary to law, there would be no reason to modify the trial court's order to be a denial without prejudice.  As described earlier, the claim that Carrillo's misunderstanding of immigration consequences damaged his ability to defend against the sentence imposed at the April 2002 sentencing hearing is a legally cognizable theory of prejudice.  Here, we consider whether the requisite prejudicial error may have occurred during a probation revocation proceeding.

This inquiry raises questions of statutory interpretation about the scope of section 1473.7, subdivision (a)(1) after the 2021 amendment.  The particular circumstances of Carrillo's criminal case raise questions about how section 1473.7, subdivision (a)(1) applies when a noncitizen violates probation, receives additional jail time, and becomes deportable due to the additional jail time.

The principles of statutory interpretation are well established, and the parties have not disputed what principles apply.  Accordingly, we provide only a brief overview of those principles.  The process of statutory construction begins with the words of the

27.

statute itself and considers their usual and ordinary meaning.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)  The threshold legal question is whether the words are ambiguous— that is, reasonably susceptible to more than one interpretation.  (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 239.)  If the text is unambiguous, courts usually adopt its plain meaning.  (*Ibid.*)  Alternatively, if the text is ambiguous, a court's primary goal is to adopt the interpretation that best effectuates the legislative intent or purpose.  (*Ibid.*; see *People v. Johnson* (2013) 57 Cal.4th 250, 260 [goal of court in construing a statute is to adopt the construction that best effectuates the purpose of the law].)

### 1.    *A "Sentence" Includes Additional Time for a Probation Violation*

The first question of statutory interpretation we address is whether section 1473.7, subdivision (a)(1)'s phrase "potential adverse immigration consequences of a conviction or sentence" should be construed to include the possibility of deportation if a future probation violation results in additional prison or jail time that causes the offense to be an aggravated felony under the INA.  Both parties answered this question yes.  The Attorney General's supplemental brief explained:

> "Put simply, if the additional time in custody is what would have created the grounds for deportation, the defendant should understand those consequences before they decide whether to admit the probation violation or proceed to a hearing.  This would facilitate the defendant's ability to 'meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the violation of probation finding and, in turn, its effect on the defendant's 'sentence.' (§ 1473.7, subd. (a)(1).)"

The Legislature has not explicitly resolved whether section 1473.7, subdivision (a)(1) applies to the admission of a probation violation or to the additional time imposed for a probation violation.  In the absence of a specific provision, we consider whether the statutory phrase "conviction or sentence" encompasses the admission of a probation violation, the additional jail time imposed for the violation, or both.

28.

On the threshold question of ambiguity, the term "sentence" could be considered reasonably susceptible to more than one meaning. For instance, it could mean only the aspects of the sentence imposed in April 2002, after Carrillo's conviction. Alternatively, it could include both the original sentence and any additional incarceration imposed as the result of Carrillo admitting a probation violation in May 2007. We have located, and the parties have cited, no published California decision addressing (1) whether the word "sentence" is ambiguous or (2) whether it includes the additional incarceration imposed for a probation violation.

There is, however, a case decided before the statute's 2021 amendment that involved a motion under section 1473.7, subdivision (a)(1) to vacate a revocation of probation. (*Cruz-Lopez, supra,* 27 Cal.App.5th 212.) In that case, the trial court denied the motion and the First District affirmed. (*Id.*, at p. 214.) The situation presented in *Cruz-Lopez* has similarities to the present case because "the sentence imposed due to appellant's probation violation made the previous crime an aggravated felony, rendering a permanent resident removable." (*Id.,* at p. 218.) The appellant's motion asserted that "he did not understand the immigration consequences of his probation violation admission." (*Id.* at p. 221.) The First District concluded the admission of a probation violation was not covered by section 1473.7 because the statutory text referred to the consequences of a guilty plea or no contest plea and that text was not ambiguous. (*Cruz-Lopez*, *supra*, at p. 221.) Thus, the court decided admitting a probation violation was not a guilty plea that could be withdrawn based on a misunderstanding of the immigration consequences. (*Ibid.*) One practice guide cites *Cruz-Lopez* for the principle that section 1473.7 "does not apply where the defendant contends he did not understand the immigration consequences of an admission to a violation of probation." (2 Couzens, et al., *Sentencing California Crimes* (The Rutter Group 2023) § 23:53, p. 350.)

We conclude *Cruz-Lopez*'s interpretation of the scope of section 1473.7, subdivision (a)(1) is out of date because it was based on the phrase "a plea of guilty or

nolo contendere" and the 2021 amendment replaced that phrase with "a conviction or sentence." (§ 1473.7, subd. (a)(1).) As a result, *Cruz-Lopez* is not authority on the questions of whether the word "sentence" is ambiguous and how any ambiguity should be resolved.

Having considered prior case law, we return to the current text of section 1473.7, subdivision (a)(1). (See *Mejia v. Reed*, *supra*, 31 Cal.4th at p. 663 [statutory construction begins with the words of the statute itself].) For purposes of this appeal, we assume that the word "sentence" in section 1473.7, subdivision (a)(1) is ambiguous. As a result, we consider which interpretation best effectuates the statute's purpose. (See *People v. Johnson*, *supra*, 57 Cal.4th at p. 260.) Section 1473.7's purpose was to "offer relief to those persons who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus." (*Vivar*, *supra*, 11 Cal.5th at p. 525.) The Legislature has declared that section 1473.7 "shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code." (Stats. 2018, ch. 825, § 1, subd. (c).)[9] Thus, the Supreme Court stated the Legislature's explicit purpose "was to make relief more broadly available to deserving defendants, given the critical interests at stake." (*Vivar*, *supra*, at p. 525.)

If the word "sentence" were interpreted to exclude the additional incarceration imposed for a probation violation, section 1473.7's purpose of making relief from adverse immigration consequences "broadly available" (*Vivar*, *supra*, 11 Cal.5th at p. 525) would be thwarted. We agree with the assessment in the Attorney General's supplemental brief that such an interpretation would result in a gap in the law. The gap would arise because the INA's definition of "aggravated felony" includes "a crime of

---

[9]    Published cases have set forth the findings and declarations in section 1016.2 and, therefore, they are not repeated here. (See *People v. Rodriguez, supra,* 68 Cal.App.5th at pp. 310–311; *People v. Mejia, supra,* 36 Cal.App.5th at pp. 867–868.)

violence … for which the *term of imprisonment* [is] at least one year." (8 U.S.C. § 1101(a)(43)(F), italics added.) Federal courts have interpreted the phrase "term of imprisonment" to include the additional time that a defendant serves as the result of a probation violation. For instance, in *Zhang v. Lynch* (9th Cir. 2015) 628 Fed.Appx. 474, the court stated: "Although Zhang was originally sentenced to 364 days' imprisonment, he was later sentenced to three years' imprisonment due to a probation violation. That term of imprisonment renders his 2003 conviction [for the willful infliction of corporal injury] an aggravated felony." (*Id.* at p. 475; see *United States v. Hidalgo-Macias*, *supra*, 300 F.3d at pp. 284–285; *United States v. Jimenez*, *supra*, 258 F.3d at p. 1125.)

Based on the way "term of imprisonment" is interpreted, if an additional period of incarceration imposed for a probation violation is excluded from the "sentence" addressed in section 1473.7, subdivision (a)(1), a class of defendants whose adverse immigration consequences are triggered by that additional period would fall outside section 1473.7, creating a gap in the relief provided by the statute. We have located nothing in the legislative history of the 2021 amendment of section 1473.7 that reasonably supports the inference that the Legislature intended to withhold relief from defendants in this class. Instead, it appears they would be "deserving"—as that term was used in *Vivar*, *supra*, 11 Cal.5th at page 525—if they meet the eligibility requirements discussed earlier and can prove they suffered a prejudicial error.

Therefore, to promote the purpose of making relief broadly available to deserving defendants, we join the parties' interpretation of the word "sentence" and conclude it encompass all parts of the "term of imprisonment" relevant for determining the immigration consequences of an offense. Under this interpretation, the word "sentence" in section 1473.7, subdivision (a)(1) includes the additional incarceration imposed for a probation violation. Thus, a defendant's motion may establish the requisite misunderstanding by proving he or she misunderstood the "adverse immigration

consequences of" the additional incarceration imposed for a probation violation. (§ 1473.7, subd. (a)(1).)

### 2. *Prejudice and Probation Violations*

A second, closely related question of statutory interpretation involves how a defendant establishes the requisite *prejudice* from his or her misunderstanding of the potential immigration consequences of the probation revocation proceeding. Should section 1473.7, subdivision (a)(1) be interpreted to allow a noncitizen to establish prejudice by showing a reasonable probability that, had he or she understood the additional incarceration imposed for a probation violation could result in the underlying conviction becoming an aggravated felony for purposes of the INA, the noncitizen (1) would not have admitted a probation violation or (2) would have defended against the amount of time imposed for the violation and obtained an immigration safe additional period of incarceration? Both parties answered this question yes. We agree.

In part III. of this opinion, we concluded a defendant could establish prejudice for purposes of section 1473.7, subdivision (a)(1) by showing a reasonable probability that he or she would have done something differently—that is, would have taken another "path"—that may have avoided adverse immigration consequences. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) Applying that interpretation to probation violations, we conclude the different paths that can be shown to establish prejudice include (1) denying a probation violation instead of admitting it and (2) presenting different arguments and evidence that would have had a reasonable probability of reducing the additional period of incarceration to an immigration-safe amount. Both decisions are links in the causal chain of events that resulted in the "sentence." This interpretation of the prejudice requirement avoids gaps in section 1473.7, subdivision (a)(1)'s coverage that would thwart the statute's purpose.

32.

### 3. *Relief Available*

Another question of statutory interpretation involves the relief available under section 1473.7, subdivision (a)(1). The statute authorizes "a motion to vacate a conviction *or* sentence." (§ 1473.7, subd. (a), italics added.) In the context of this case, we conclude this statutory text defines the scope of the relief available.[10] When "or" is used in a statute, it usually is given a disjunctive meaning. (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30 [when used in a statute, "or" is disjunctive]; *Fiorentino v. City of Fresno* (2007) 150 Cal.App.4th 596, 603 [ordinary meaning of "or" is to mark an alternative, such as either this or that].) Consequently, we conclude the statute allows a moving party to seek either an order vacating the conviction (which will necessarily vacate the sentence) or an order vacating only the sentence. Because additional incarceration imposed for a probation violation is part of the "sentence" for purposes of section 1473.7, subdivision (a)(1), we conclude a motion could seek an order vacating only the additional incarceration imposed for a probation violation. (See generally, *People v. Bautista* (2004) 115 Cal.App.4th 229, 240, fn. 8 [one technique to avoid immigration consequences for crimes whose status as an aggravated felony depends on the length of imprisonment is to obtain a disposition of 364 days instead of 365 days].) We further conclude a motion may seek to vacate the admission of a probation violation as a method for vacating the additional incarceration. In other words, vacating the admission of the probation violation would be appropriate if the admission was the product of prejudicial error because the order would have the effect of vacating part of the "sentence."

To summarize, the relief available under section 1473.7, subdivision (a)(1) includes an order vacating (1) the initial conviction, (2) the sentence imposed for the

---

**10** In comparison, where the moving party seeks "to vacate a conviction or sentence obtained through a plea," the available relief includes allowing "the moving party to withdraw the plea." (§ 1473.7, subd (e)(3).)

33.

initial conviction, (3) a subsequent admission of a probation violation, and (4) the additional incarceration imposed for a probation violation. Applying this interpretation to the facts of this case, the range of relief available to Carrillo included an order vacating the March 2002 conviction for assault with a firearm, an order vacating the sentence of 301 days in jail imposed in April 2002, an order vacating the May 2007 admission of the probation violation, an order vacating the 90 days in jail imposed for a probation violation, or some combination of the foregoing. Carrillo's motion sought only to vacate the conviction for assault with a firearm. As a result, there are grounds for relief under section 1473.7, subdivision (a)(1) that were not raised in his original motion.

### B. Other Grounds for Deportation

The Attorney General's supplemental brief states that it is not appropriate to modify the denial of Carrillo's motion to be without prejudice to a new motion raising grounds not addressed in the initial motion. The Attorney General contends, in effect, that even if Carrillo is able to vacate all or part of the sentence imposed, he is still subject to mandatory deportation because the assault conviction still qualifies as a crime of moral turpitude and as a firearm offense. In short, the Attorney General contends any misunderstanding by Carrillo affecting his defense against the term of imprisonment cannot be a prejudicial error because changing the sentence will not protect him from deportation on alternate grounds. The Attorney General also explicitly acknowledges that, thus far, the alternate grounds for deportation have not been asserted by the federal government in Carrillo's removal proceedings.

#### 1. *Crime Involving Moral Turpitude*

Here we consider whether it is pointless for Carrillo to pursue an outcome that alters his term of imprisonment because, regardless of the term of imprisonment order, the offense is a crime involving moral turpitude for which deportation is mandatory.

As stated earlier, assault with a firearm involves moral turpitude and will render a noncitizen deportable if "committed within five years … after the date of admission." (8 U.S.C. § 1227(a)(2)(A)(i).) The INA defines "admission" and "admitted" as "the lawful entry of [a noncitizen] into the United States after inspection and authorization by an immigration officer." (8 U.S.C. § 1101(a)(13)(A).)

The notice to appear in removal proceedings issued by the Department of Homeland Security to Carrillo in August 2016 stated: "You were admitted to the United States at San Francisco, California on December 2, 1999 as a lawful permanent resident." The Attorney General relies on this date to establish Carrillo committed the assaults within five years of admission and, therefore, Carrillo is deportable under 8 United States Code section 1227(a)(2)(A)(i). However, the statement in the notice to appear does not definitively establish when Carrillo was *initially* admitted to the United States. The notice to appear might have used the word "admitted" to describe an adjustment of his immigration status. (See *Aremu v. Department of Homeland Security* (4th Cir. 2006) 450 F.3d 578, 583 [date of admission for purpose of removal based on a crime involving moral turpitude was not when the noncitizen's status was adjusted]; *Abdelqadar v. Gonzales* (7th Cir. 2005) 413 F.3d 668, 672–673 [noncitizen was not deportable for commission of a crime involving moral turpitude over six years after he entered the United States on a visa, even though the crime was committed within five years of date of adjustment of his status to lawful permanent resident]; cf. *Diaz Esparza v. Garland* (5th Cir. 2022) 23 F.4th 563, 574–575 [date of admission was when noncitizen adjusted his status to lawful permanent resident where earlier entry into the United States was unlawful].)

If Carrillo lawfully entered the United States before June 30, 1996, his crime would have been committed more than five years after his date of admission. The fact that Carrillo did not use an interpreter in the 2002 criminal proceedings provides some support for the inference that he entered the United States before obtaining lawful

35.

permanent resident status in December 1999.  His language abilities, however, do not provide any insight into whether any earlier entry was lawful.

Consequently, the appellate record does not establish—one way or the other—whether Carrillo committed the assaults within five years after his "date of admission" into the United States.  (8 U.S.C. § 1227(a)(2)(A)(i).)  In a subsequent motion, Carrillo might be able to present evidence of a lawful entry before June 30, 1996.  Thus, we cannot find as a matter of law that Carrillo is deportable because he committed a crime involving moral turpitude within five years of his initial admission into the United States and, as a result, any subsequent motion attempting to vacate all or part of his term of imprisonment is pointless.

### 2. *Certain Firearm Offenses*

Carrillo's conviction of assault with a firearm appears to qualify as a type of firearm offense covered by 8 United States Code section 1227(a)(2)(C).  (See pt. II.A.3., *ante*.)  The record contains no explanation for why the Department of Homeland Security has not sought to deport Carrillo based on a conviction of a covered firearm offense.  A possible explanation is that if Carrillo's removal was sought solely for a firearm offense, Carrillo could seek an adjustment of status, which would effectively convert the removal proceedings into admissibility proceedings.  (See *Romo v. Barr, supra,* 933 F.3d at p. 1202; *Pascua v. Holder* (9th Cir. 2011) 641 F.3d 316, 322.)  The Department of Homeland Security may have recognized this possibility and determined deportation for a firearm offense, standing alone, was not worth pursuing.

Under these circumstances, we cannot presume that if Carrillo successfully reduces his term of imprisonment ordered to less than one year, the Department of Homeland Security will amend its allegations and seek removal based on his commission of a deportable firearms offense.  Therefore, we conclude this possible alternate ground

for deportation does not prevent Carrillo from demonstrating prejudice involving the term of imprisonment that caused his conviction to qualify as an aggravated felony.

### C. Further Pursuit of Unraised Grounds

The last argument presented in the Attorney General's supplemental brief to support its view that the order denying the motion should be affirmed without modification is that, although Carrillo did not pursue all the grounds for relief available under section 1473.7, subdivision (a)(1), the circumstances of this case do not justify allowing him to pursue those grounds in a new motion. The brief asserts (1) the amendment expanding section 1473.7, subdivision (a)(1) became effective January 1, 2022, which was three months before Carrillo filed his motion; (2) Carrillo has been aware since at least March 2018 that the additional time imposed for the probation violation converted his conviction into an aggravated felony, which is the basis for removal asserted in his immigration case; and (3) he had the burden of proving his entitlement to relief under section 1473.7, subdivision (a)(1) and failed. Based on these factors, the Attorney General contends the trial court's denial of Carrillo's motion should be affirmed with prejudice. We disagree.

When Carrillo filed and argued his motion, no published judicial decision had described how the newly enacted statutory text applied to a conviction that became an aggravated felony only after a probation violation was admitted and the time imposed for that violation caused the total term of imprisonment to exceed one year. Furthermore, no published judicial decision had explained *Cruz-Lopez*'s determination that section 1473.7 could not be used to challenge the admission of a probation violation was abrogated by the 2021 amendment. (See *Cruz-Lopez*, *supra*, 27 Cal.App.5th at p. 221.) Based on these circumstances, the statute's overall purpose, and the 2021 amendment's ameliorative purpose, we conclude it is appropriate to allow Carrillo an opportunity to file a new motion addressing grounds (1) that were not presented in his original motion

37.

and (2) that this opinion has determined are cognizable under section 1473.7. (Cf. *People v. Page* (2017) 3 Cal.5th 1175, 1190 [order denying defendant's petition was affirmed without prejudice to consideration of a new petition providing evidence of his eligibility for resentencing]; see *People v. Singh*, *supra*, 81 Cal.App.5th at p. 153 [2021 amendment "created ameliorative changes"].)

Furthermore, collateral estoppel does not bar the presentation of those issues because a new motion would not involve the relitigation of an issue actually litigated and decided when Carrillo's first motion was denied. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [five requirements for application of collateral estoppel, a doctrine that "precludes relitigation of issues argued and decided in prior proceedings"].) The new issues include whether his 2002 lack of understanding of immigration consequences was prejudicial because, had he understood, he would have been able to defend against those consequences by arguing for and obtaining a sentence that was more favorable from the immigration perspective; whether he lacked a meaningful understanding of potential immigration consequences at the time of the probation revocation proceedings; and whether any misunderstanding at that time resulted in a prejudicial error involving his admission of the probation violation or his defense against the time imposed for the probation violation.

Accordingly, we will modify the trial court's denial of Carrillo's motion to be without prejudice pursuing a new motion limited to grounds not raised in his initial motion.[11]

---

[11] The parties may stipulate to the immediate issuance of remittitur (either before or after the period to request a rehearing has expired) pursuant to California Rules of Court, rule 8.272(c)(1), which is made applicable to appeals in criminal cases by California Rules of Court, rule 8.366(a). (See *People v. Porter* (2022) 73 Cal.App.5th 644, 652.)

## DISPOSITION

The May 2022 order denying the motion to vacate under section 1473.7, subdivision (a)(1) is modified so that the denial is without prejudice to the filing of a new motion asserting grounds not specifically raised in the initial motion.  As modified, the order is affirmed.

FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.